

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| SHANA HILTON,<br>　　　　Plaintiff,<br><br>vs.<br><br>COURT GOSSARD and CORP PRES.<br>BISHOP CHURCH OF JESUS CHRIST<br>OF LDS,<br>　　　　Defendants. | §<br>§<br>§<br>§　CIVIL ACTION NO. 5:23-01643-MGL<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REMAND**

**I.    INTRODUCTION**

Plaintiff Shana Hilton (Hilton) filed this lawsuit in the Orangeburg County Court of Common Pleas against Defendants Court Gossard (Gossard) and Corp Pres. Bishop Church of Jesus Christ of LDS (LDS) (collectively, Defendants). Hilton brings state claims of negligence, negligence per se, gross negligence, and negligent entrustment.

Defendants removed the case to this Court on the basis of diversity jurisdiction, in accordance with 28 U.S.C. § 1332.

Pending before the Court is Hilton's motion to remand. Having carefully considered the motion, the response, the reply, the notice of removal, the record, and the relevant law, it is the judgment of this Court Hilton's motion to remand must be denied.

II.     **FACTUAL AND PROCEDURAL HISTORY**

Hilton alleges in the complaint that she "is a citizen and resident of the County of Orangeburg, South Carolina[,]" Complaint ¶ 1; "[u]pon information and belief, . . . Gossard . . . was a citizen and resident of the County of Orangeburg, state of South Carolina, at the time of the incident herein[,]" *id*. ¶ 2; and "[u]pon information and belief, [LDS] is an organization existing in Irmo, South Carolina, with its principal place of business in South Carolina, operating under South Carolina law[,]" *id*. ¶ 3.

Hilton states that,"[o]n or about February 14, 2022, at or about 7:l0 pm, [she] was driving east on Kennerly Road in her 2011 Nissan near St. Matthews, South Carolina, when . . . Gossard, driving a 2018 Chevrolet traveling south on Kaigler Road, . . . failed to yield right-of-way to [her] vehicle at the stop-sign intersection with Kennerly Road, causing a violent T-bone collision." *Id*. ¶ 5.  According to Hilton, "[t]he vehicle driven by . . . Gossard was owned by . . . [LDS]." *Id*. ¶ 6.

Hilton maintains, "[a]t the time of the events described herein, . . . [LDS] knew or should have known of . . . Gossard's history of careless and/or negligent driving habits and driving record, and thus negligently entrusted its vehicle to . . . Gossard's use." *Id*. ¶ 7.

Hilton further contends, "[a]s a result of Defendants' negligence, recklessness, carelessness, willfulness, wantonness, and gross negligence, [she] received serious and permanent injuries resulting in medical care, medical expenses, severe excruciating pain, and serious, permanent injuries which have and will in the future cause each to endure great physical pain, suffering, mental anguish, emotional distress, and ultimately cause [her] to incur future medical bills." *Id*. ¶ 8.

As the Court already stated, after Hilton filed this lawsuit in the Orangeburg Court of Common Pleas, Defendants removed it to this Court. Thereafter, Hilton filed her motion to remand, Defendants filed their response in opposition to the motion, and Hilton filed her reply in support.

The Court, having now been fully briefed on the relevant issues, will adjudicate Hilton's motion.

### III.     STANDARD OF REVIEW

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Mulachey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). "Because removal jurisdiction raises significant federalism concerns, [the Court] must strictly construe removal jurisdiction." *Id*. "If federal jurisdiction is doubtful, a remand is necessary." *Id*.

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). To remove to federal court, the defendant or defendants must file "a notice of removal. containing a short and plain statement of grounds for removal." *Id*. § 1446(a).

### IV.     DISCUSSION AND ANALYSIS

"Courts have consistently interpreted § 1332 and its predecessors to require complete diversity such that the state of citizenship of each plaintiff must be different from that of each defendant." *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999). Again, Hilton is a citizen of South Carolina. Thus, if either Gossard or LDS is a citizen of South Carolina,

5:23-cv-01643-MGL     Date Filed 11/16/23     Entry Number 40     Page 4 of 8

as Hilton alleges in both her complaint and her motion to remand, then the Court must grant her motion to remand because it lacks diversity jurisdiction.

### A.    *Whether Gossard is a citizen of South Carolina*

Hilton maintains "[t]he allegations and the circumstances support Gossard is a resident of South Carolina, [her] same residence, and thus defeating diversity." Hilton's Motion to Remand at 2. According to Hilton,

> [t]he events giving rise to this dispute occurred in Orangeburg County. At that time, Gossard lived in Orangeburg. Before living in Orangeburg, Gossard lived in Columbia, South Carolina. In October of 2022, Gossard was living in Beaufort, South Carolina. At the time of service, March 2023, Gossard was living in Hartsville, South Carolina. . . . [H]is presence in South Carolina has extended at least seventeen . . . months to date. This is certainly more than 'visiting' and reflects an intent to reside in South Carolina.

*Id*. at 2-3 (citations omitted).

Defendants, on the other hand, contend

> the only reason [Gossard] has been in South Carolina was for his volunteer missionary service. He never had any intent to remain in South Carolina after this mission is complete. This is evidenced by his Utah Driver's License, lack of voter registration in South Carolina, and general lack of any meaningful ties to South Carolina. Gossard has resided in Utah since 2013, attended high school in Utah, and intends to return to Utah after his missionary service is complete. Even if his seventeen . . . months in South Carolina for his missionary service can be considered as residing, which is disputed, he still did not have the requisite intent to remain in South Carolina indefinitely.
>
> Gossard has not shown any evidence of an intent to remain in South Carolina after his mission is complete, and therefore, his domicile is still Utah.

Defendants' Response in Opposition to Hilton's Motion to Remand at 4 (citations omitted).

4

In Gossard's affidavit, he states, in relevant part, "[a]t the time of the accident underlying this Complaint, I was in South Carolina as a missionary for The Church of Jesus Church of Jesus Christ of Latter-day Saints." Gossard's Affidavit ¶ 3. According to Gossard, his "service as a volunteer missionary began on September 6, 2021, and [was] set to end on September 13, 2023." *Id.* ¶ 4. He also attests that, "[p]rior to accepting my missionary assignment, he resided in Utah[,] [and that his] permanent address, personal belongings, and all significant ties remain in Utah." *Id.* ¶ 6.

In addition, Gossard declares that, "[t]hroughout the duration of [his] stay in South Carolina, [he] did not establish any permanent residence, domicile, or permanent physical presence within the state. [He] did not rent or own any property in my name, possess a South Carolina driver's license, register to vote, or receive utility bills in [his] name within the state." *Id.* ¶ 8. He further maintains that, "[a]fter the end of [his] mission, [he] plan[s] to return home to Utah, attend a trade school, and work as an HV AC technician in Utah." *Id.* ¶ 11. He concludes his affidavit by stating that he "currently hold[s] a Utah driver's license." *Id.* ¶ 12.

"For purposes of federal diversity jurisdiction 'citizenship' and 'domicile' are synonymous." *Hendry v. Masonite Corp.*, 455 F.2d 955 (5th Cir.1972). "For purposes of diversity jurisdiction, residency is [insufficient] to establish citizenship." *Johnson v. Advance America*, 549 F.3d 932, 937 n.2 (4th Cir. 2008).

"The question of changing one's domicile is largely a matter of intent, and this fact must be determined in the light of all the evidence, in the circumstances, and the reasonable inferences to be drawn therefrom." *Swift & Co. v. Licklider*, 7 F.2d 19, 21 (4th Cir. 1925). "[M]ere presence in a new location does not effect a change of domicile; it must be accompanied with the requisite intent. In most cases, the difficult issue is not presence but whether the intent to change domicile can be shown." *Coury v. Prot*, 85 F.3d 244, 250 (5th Cir. 1996).

"In determining a litigant's domicile, the court must address a variety of factors. No single factor is determinative. The court should look to all evidence shedding light on the litigant's intention to establish domicile." *Id*. at 251. "The factors may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id*. "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." *Id*.

So, the question for the Court to decide here is whether the record supports Gossard's argument he lacks any intent to remain in South Carolina after his two-year missionary assignment is complete.

"A judge's toolkit includes common sense." *United States v. Montieth*, 662 F.3d 660, 668–69 (4th Cir.2011). It also entails common experience and knowledge, which, here, includes an awareness that many young Mormons commit to a two-year term of missionary service for their church.

There are also published opinions describing the practice. *See, e.g.*, *Matter of Matter of Woodward*, 232 A.D.2d 22, 24 (N.Y. A.D. 1 Dept.1997) (stating the respondent in a lawyer discipline proceeding "spent two years working as a voluntary missionary near Seattle, Washington."); *Citrus Valley Estates, Inc. v. C. I. R.*, 99 T.C. 379, 433–34 (Tax Court 1992) (A party in a tax case "joined the church when he was 30 years old and, therefore, missed the opportunity to serve the 2–year mission that usually is performed by young Mormons.").

Thus, the Court thinks credible Gossard's argument he came to South Carolina for a definite two-year missionary assignment, with no intent to stay afterward. This is buttressed by Gossard's affidavit, which the Court need not set forth again here. Suffice it to say, the record lacks any evidence

whatsoever Gossard intends to remain in South Carolina upon the completion of his two-year missionary assignment here in South Carolina. To the contrary, everything points to his returning to Utah. Therefore, the Court is unable to agree Gossard can properly be considered a citizen of South Carolina. As such, his presence in this lawsuit fails to divest the Court of its diversity jurisdiction over this matter.

### B.     *Whether LDS is a citizen of South Carolina*

Hilton contends "the accident report, the vehicle driven by Gossard was owned by [LDS] with an address in Irmo, South Carolina." Hilton's Motion to Remand at 3. "The car's registration[,]" according to Hilton, "would accurately reflect the owner of the vehicle, which is not an entity in Utah, but rather one in South Carolina." *Id*.

> But, according to LDS
>
> > [LDS] owned the car involved in the crash between Gossard and the [Hilton], as indicated on the car's title. [Hilton] indicates that [LDS] is located in South Carolina "per the accident report," which lists [LDS] as the owner with an Irmo, South Carolina address. However, this South Carolina address does not change the fact that the owner of the vehicle, [LDS], is still a corporation and for purposes of citizenship, a corporation can only be a citizen of the state where incorporated and where its principal place of business is located. The Irmo address is nothing more than a local mission office. . . [LDS] was and still is, a Utah Corporation with its principal place of business in Utah.
>
> Therefore, [LDS]'s citizenship is solely in Utah.

Defendants' Response in Opposition to Hilton's Motion to Remand at 5 (citation omitted)..

Courts may take judicial notice of governmental websites. *See Hawk Aircargo, Inc. v. Chao*., 418 F.3d 453, 457 (5th Cir.2005) (taking judicial notice of the information on a government agency's website). The Court, therefore, takes judicial notice of the South Carolina Secretary of

7

State website.  According to that website, the name "Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints**,**" which is the name Hilton used for this defendant, is the "[f]ormer [n]ame[ ]" for The Church of Jesus Christ of Latter-day Saints; and its state of incorporation is listed as being in Utah. https://businessfilings.sc.gov/BusinessFiling/Entity/Profile/38613102-5adb- 4f0e-b80b-81d2e925c07d  (last accessed on November 14, 2023).

The diversity statute, 28 U.S.C. § 1332, provides, in pertinent part, that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" *Id*. § 1332(c)(1).  As the Court stated above, LDS is incorporated in Utah, and absent from the record is any suggestion its principal place of business is here in South Carolina.  In fact, according to Defendants, its principal place of business is also in Utah, which Hilton fails to dispute.

Consequently, inasmuch as Defendants have established LDS is a citizen of Utah, its presence in this action also fails to destroy the Court's diversity jurisdiction over this matter.

## V.     CONCLUSION

Based on the foregoing discussion and analysis, Hilton's motion to remand is **DENIED**.

**IT IS SO ORDERED**.

Signed this 16th day of November, 2023, in Columbia, South Carolina.

                                                           s/ Mary Geiger Lewis  
                                                           MARY GEIGER LEWIS  
                                                           UNITED STATES DISTRICT JUDGE